# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# DELTA DIVISION

JAMES MORRIS                                                                PETITIONER

v.                                                     No.: 2:02CR74-P

UNITED STATES OF AMERICA                             RESPONDENT

## MEMORANDUM OPINION

This matter comes before the court on the April 16, 2004, *pro se* petition of James Allen Morris for a writ of *habeas corpus* under 28 U.S.C. § 2255. The government responded to the petition June 15, 2004, and the petitioner submitted a rebuttal on June 25, 2004. The matter is ripe for review. For the reasons set forth below, the instant petition for a writ of *habeas corpus* shall be denied.

## Facts and Procedural Posture

James Allen Morris ("petitioner") was charged in a five-count superseding indictment filed August 28, 2002, in the Northern District of Mississippi. Count one charged that the petitioner did knowingly and intentionally possess with intent to distribute in excess of 5 grams of a mixture and substance containing cocaine base, crack cocaine, a Schedule II controlled substance, in violation of Title 21, of the United States Code, Section 841 (a) and (b)(1)(B). Count two charged the petitioner with knowingly and intentionally possessing heroin, a Schedule I controlled substance, in violation of Title 21, of the United States Code, Section 844. Count Three charged the petitioner with knowingly and intentionally possessing cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 844. Count Four charged that the petitioner, having previously been convicted of a felony crime punishable by

imprisonment to a term exceeding one year, did knowingly possess in and affecting commerce a firearm, a Ranger .22 caliber rifle, and a Ruger .270 caliber rifle, which firearms had previously been transported in interstate commerce, all in violation of Title 18, United States Code, Sections 922(g)(1) and 924(a)(2). Count Five charged the petitioner, having previously been convicted of a felony, that is punishable by imprisonment to a term exceeding one year, did knowing possess in and affecting commerce a firearm, a Smith and Wesson .38 caliber revolver, a Bryco .380 caliber semi-automatic handgun, a Mossburg 16 gauge shotgun, a Sport Arms .38 caliber revolver, which firearms had previously had been transported in interstate commerce, all in violation of Title 18, United States Code, Sections 922(g)(1) and 924 (a)(2).

On December 4, 2002, the petitioner – with the assistance of his counsel – entered into a plea agreement in which he pled guilty to counts one and four of the superseding indictment, possession with intent to distribute in excess in excess of five grams of cocaine base, in violation of 21 U.S.C. 841(a) and (b)(1)(B), and possession of a firearm by a convicted felon in violation of 18 U.S.C. §922(g)(1) and §924(a)(2), respectively. The government agreed to dismiss the remaining counts and not charge the petitioner with any related offenses. The plea agreement stated that: "There is no agreement as to the sentence to be imposed, which will be in the sole discretion of the Court subject to the Federal Sentencing Guidelines, which have been explained to defendant by his/her attorney." The plea agreement also stated that: "Apart from being advised of the applicability of the U.S. Sentencing Guidelines, no promises or representation whatsoever has been made to the defendant as to what punishment the Court might impose if it accepts the plea of guilty." The plea agreement further declared that: "This agreement fully reflects all promises, agreements and understandings between the defendant and the United

States Attorney."

At the change of plea hearing, the Assistant United States Attorney in attendance stated that the amount of crack cocaine found on the scene after the prisoner fought with the arresting officer was "48.6 grams." The Presentence Investigation Report, however, set the amount of crack cocaine found at the scene of the petitioner's arrest at 55.7 grams. A review of the Mississippi Crime Laboratory Report reveals that the total weight of the crack cocaine and its packaging was 55.7 grams, while the weight of the crack cocaine alone was 48.6 grams. The United States Probation Service used 55.7 grams when performing the sentence range calculation under the 2002 United States Sentencing Guidelines.

In accordance with the plea agreement, the petitioner appeared before the district court with his counsel on December 4, 2002, and tendered a plea of guilty to Count One, possession with intent to distribute in excess in excess of five grams of cocaine base, in violation of 21 U.S.C. 841(a) and (b)(1)(B), and Count Four, possession of a firearm by a convicted felon in violation of 18 U.S.C. §922(g)(1) and §924(a)(2). (P.T. 1-30). The court advised the petitioner of the maximum possible statutory penalty for Count One, 40 years imprisonment, and under Count Four of a maximum statutory penalty of 10 years imprisonment. (P.T. 15-22). The court reviewed the applicability of the Sentencing Guidelines with the petitioner, and told him that his guideline sentence could not be determined until the completion of the presentence report. (P.T. 20). The court then reviewed the terms of the plea agreement with the petitioner, including the provisions that there was "no agreement as to the sentence to be imposed," that there was "no promise or representation . . . as to what punishment the court may impose," and that the written plea agreement signed by him and his attorney "fully set forth the agreement" with the

government. (P.T. 20-23). The court accepted the petitioner's plea of guilty as knowing and voluntary based upon the his responses to these questions. (P.T. 28).

Prior to sentencing, a probation officer prepared a pre-sentence investigation reflecting a base level offense of 32 on Count one of the superseding indictment. *See* Presentence Investigation Report ("PSI"), p.8. This was increased by two for possession of a dangerous weapon. *Id.* at 9. On Count 4, the base level of the offense was 24 which was increased by 2 for involving three or more firearms and increased by 4 for the defendant using or possessed any firearm or ammunition in connection with another felony offense, or possessed or transferred any firearm or ammunition with knowledge, intent, or reason to believe that it would be possessed in connection with another felony offense. *Id.* The offense level determined in Count 1 was 34, which was greater than the resulting offense level for Count 4 which was 30. *Id.* Therefore, the subtotal offense level for Count 4, was adjusted to 34. *Id.* p. 9-10. However, this was lowered by three levels pursuant to U.S.S.G. §3E1.1(b)(2) for acceptance of responsibility. *Id.* This, coupled with a history as a career offender, resulted in a total offense level of 31 and a sentence range of 188 to 235 months. *See* PSI, p.22.

On February 25, 2003, the court sentenced the petitioner to 230 months imprisonment on Count one and a term of 120 months on Count 4, each to be served concurrently, 5 years supervised release, and a special assessment of $200.00. *See United States v. Morris*, Criminal No. 2:02CR74-P-B, Judgment Dated February 25, 2003. The petitioner submitted eight written objections at the sentencing hearing, covering a multitude of topics. One of the petitioner's objections was that the amount of cocaine confiscated during his arrest was incorrect; the petitioner specifically referred the "55.7 grams" and "48 grams." The court overruled each of the

petitioner's objections.

The petitioner filed a direct appeal March 9, 2003. *U.S.A. v. James Morris*, Criminal No. 2:02CR74-P-B (docket entry #65). The appeal was dismissed on May 22, 2003 for want of prosecution, as the defendant failed to timely order the transcript, make financial arrangements, and pay the docketing fee. *U.S.A. v. James Morris*, Criminal No. 2:02CR74-P-B (docket entry #66). The appeal was reinstated on June 25, 2003. *U.S.A. v. James Morris*, Criminal No. 2:02CR74-P-B (docket entry #67). On appeal, the Fifth Circuit concluded that, during his guilty plea, the petitioner "had no support in the record for his assertion that he did not have close assistance of counsel." *United States v. Morris*, No. 03-60247 (5th Cir. Filed Dec. 29, 2003).

The petitioner then filed his motion to vacate, set aside, or correct his sentence under 28 U.S.C. §2255 on April 16, 2004. *See U.S.A. v. James Morris*, Criminal No. 2:02CR74-P-B (docket entry #74). In his motion under 28 U.S.C. § 2255, the petitioner alleges the following grounds for relief:[1] (1) trial counsel was ineffective; (2) appellate counsel was ineffective for failing to raise issues preserved for appeal by trial counsel; (3) that the government breached it's plea agreement; and that (4) the court lacked the jurisdiction to sentence him.

**Ineffective Assistance of Trial Counsel**

To prove his claim that his counsel was ineffective, a defendant must demonstrate that (1) counsel's conduct was constitutionally deficient because it fell below an objective standard of reasonableness; and (2) this deficient performance prejudiced his defense. *United States v. Bass*, 310 F.3d 321, 325 (5th Cir. 2002) citing *Strickland v. Washington*, 466 U.S. 668, 687-88, 104

---

[1]The petitioner mentioned other potential grounds for relief in his petition for a writ of *habeas corpus*. He failed, however, to brief those grounds or allege facts sufficient for the court to review them.

S.Ct. 2052 (1984). The petitioner must prove not only that counsel's conduct was deficient, he must also prove that counsel's deficient performance caused the petitioner actual prejudice to legal position. To prove prejudice, the defendant must show "that there is a reasonable probability that, but for the counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. 2052. The petitioner must prove both deficient performance and prejudice. *Id.* at 697.

The petitioner alleges several grounds of ineffective assistance of trial counsel. The petitioner argues first that his attorney failed to inform him that he would not be able to appeal his pre-trial motions concerning the "validity" of the evidence against him. Next the petitioner argues that trial counsel did not consult with him sufficiently. The petitioner argues third that his counsel was ineffective for not supporting his motion to withdraw his guilty plea – and for not moving for withdrawal of the guilty plea because the court lacked jurisdiction to sentence the petitioner as a career criminal absent the filing of a motion under 21 U.S.C. § 851. None of these grounds for relief has merit, and all claims for relief based upon a theory of ineffective assistance of trial counsel shall be dismissed.

The petitioner's contention that he did not realize he would not be able to appeal the court's adverse rulings on his pre-trial motions is belied by the record before the court, and the court rejected the argument at sentencing. Neither the plea agreement nor the plea colloquy stated that the petitioner could appeal pretrial motions. The petitioner entered into an unconditional plea agreement – with no reservation of rights to appeal any pretrial motion. The plea agreement stated, "This agreement fully reflects all promises, agreements and understandings between the defendant and the United States Attorney," and the agreement

"constitutes the only plea agreement between the parties." At entry of his guilty plea the petitioner testified that no one had made any promises to him in addition to the plea agreement. (Plea Transcript p. 21). He also stated that he understood that under some circumstances he or the government had the right to appeal the *sentence*. Nothing in the record suggests a right to appeal anything else.

In addition, the petitioner waited until sentencing to inform the court of his professed intention to appeal the denial of his pretrial motions – a misunderstanding of his ability to do so. At his plea hearing, however, the petitioner stated, "it was my intention all along to exercise my right to pretrial motions . . . [a]nd it was my intention all long that if I lost those motions, then I was going to plead guilty." (Plea Transcript, p. 6). "As I said before, it was my intention all along to exercise my pretrial motions rights, and if I was denied, it was my intention to plead guilty at that point." (Plea transcript, p. 7).

In any event, the petitioner has pled guilty unconditionally and admitted each element of the crimes in a dialogue with the court. (PST 12-21). A criminal defendant who pleads guilty admits all the elements of the formal criminal charge and waives all defects – other than subject matter jurisdiction – in the proceedings leading to conviction. *Barrientos v. United States,* 668 F.2d 838, 842 (5th Cir.1982) (emphasis added). "When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Tollett v. Henderson,* 411 U.S. 258, 267, 93 S.Ct. 1602, 1608, 36 L.Ed.2d 235 (1973). As such, this ground for relief shall be dismissed as waived and for want of substantive merit.

### Trial Counsel Failed to Consult Sufficiently With the Petitioner

The record shows – despite the petitioner's claims to the contrary – that his counsel consulted with him a great deal. The petitioner was so belligerent with his trial counsel that she could not be alone in a room with him. The petitioner was so obstinate and dissembling in his interaction with counsel and the court that the court ordered counsel to keep a written record of every action and contact with the petitioner. The court's direction paid off when the petitioner alleged at sentencing that his attorney had not provided a copy of the Presentence Investigation Report to the petitioner for review. Counsel, anticipating such a tactic from her client, had actually sent the required documents to the petitioner via hand delivery. Despite the difficulties the petitioner himself introduced into the attorney-client relationship – and to the court proceedings – trial counsel conferred with the petitioner frequently and negotiated a plea agreement that substantially reduced the petitioner's potential sentence. The petitioner himself testified at his change of plea hearing that his counsel had performed adequately. This claim shall be dismissed for want of substantive merit.

### Trial Counsel Failed to Move for Withdrawal of the Petitioner's Guilty Plea

At his sentencing hearing the petitioner moved (against the advice of his appointed counsel) to withdraw his guilty plea, alleging that, at the time he changed his plea he believed he had reserved the right to appeal the court's rulings on several pretrial motions. The transcript of the plea hearing colloquy, however, shows that any such belief would be, at best, irrational, and at worst, a lie to the court. As such, the petitioner's trial counsel had no basis for such a motion.

A defendant has no absolute right to withdraw a guilty plea; the district court may, however, permit a defendant to withdraw a plea upon showing a fair and just reason. *United*

*States v. Still*, 102 F.3d 118, 123-24 (5th Cir. 1996), *cert. denied* 522 U.S. 806, 118 S.Ct. 43, 139 L.Ed.2d 10 (1997); FED. R. CRIM. P. 32 (e). The court must consider the totality of the circumstances in determining whether a defendant's reason is fair and just – using seven factors, whether: (1) the defendant has asserted his innocence, (2) withdrawal will prejudice the government, (3) the defendant delaying in filing his motion for withdrawal, (4) withdrawal would substantially inconvenience the court, (5) the defendant had close assistance of counsel when entering the plea, (6) the plea was knowing and voluntary, and (7) withdrawal would waste judicial resources. *United States v. Carr*, 740 F.2d 343-44 (5th Cir. 1984), *cert. denied*, 471 U.S. 1004, 105 S.Ct. 1865, 85 L.Ed.2d 159 (1985). The district court need not make findings on all the *Carr* factors. *United States v. Badger*, 925 F.2d 101, 104 (5th Cir. 1991). The defendant carries the burden of establishing a fair and just reason for withdrawing his plea. *Still*, 102 F.3d at 124.

The petitioner did not meet even one of the seven *Carr* factors. The petitioner has never asserted his innocence. Withdrawal of the plea would prejudice the government, as the government prepared for the plea and sentencing hearings, produced numerous documents, investigated the petitioner for sentencing, and produced an extensive presentence investigation report. The petitioner delayed his change of plea hearing December 4, 2002, until his February 25, 2003, sentencing hearing to file his motion to withdraw his plea. Most of the petitioner's actions appear aimed to substantially inconvenience the court through delay; a withdrawal of the petitioner's plea would have been a continuation of that practice. The petitioner had close assistance of counsel throughout the case. The court found that the plea was knowingly and voluntarily given. Clearly, withdrawal of a valid guilty plea would waste judicial resources. As

all seven *Carr* factors weighed against withdrawal of the petitioner's guilty plea, his counsel will not be taken to task for deciding not to make such a motion. Further, the petitioner himself filed the motion to withdraw his plea, and the court considered and rejected the motion. The petitioner thus suffered no prejudice from counsel's decision not to file the motion in question. This issue is without merit and shall be dismissed.

## Ineffective Assistance of Appellate Counsel

The petitioner claims that appellate counsel was ineffective for failing to raise the following three[2] objections that his trial attorney preserved in the sentencing hearing:

1. Inclusion of information he had given under Rule 11, FED. R. CRIM. P., in the Presentence Investigation Report.

2. Using an "eight point increase [in the offense level] for 'guns' in that these are cumulative and amount to 'double[-]dipping.'"

3. The quantity of cocaine base used to calculate the petitioner's offense conduct should have been .662 grams, rather than 55.7 grams; the government impermissibly used conduct under FED. R. CRIM. P. 11 to arrive at the 55.7 grams.

All of these objections were overruled by the trial court. As discussed below, the first two were mundane applications of the Federal Sentencing Guidelines. (PSR 14-16). The third raised a point of error by the court – not by counsel. As discussed below, the petitioner's claims of ineffective assistance of counsel are without merit and shall be dismissed.

---

[2]Objections three and four to the PSR have been combined for the purposes of this discussion.

### Objection 1: The petitioner objected to the inclusion in the PSR of information he had given under FED. R. CRIM. P. Rule 11.

The petitioner argues that only under very specific instances set forth in Rule 11 is any statement by a defendant to be used or considered in determining the guideline sentence range. The trial court dismissed this objection because the Rule 11 information was not used or considered in determining the guideline sentencing range. Under U.S.S.G. §1B1.8(a) where a defendant agrees to cooperate with the government by providing information concerning unlawful activities of others, and as part of that cooperation agreement the government agrees that self-incriminating information provided pursuant to the agreement will not be used against the defendant, then such information shall not be used in determining the applicable guidelines range, except to the extent provided in the agreement. In addition, under U.S.S.G. §1B1.8 Application Note 1, this provision does not authorize the government to withhold information from the court – it states only that self-incriminating information obtained under a cooperation agreement is not to be used to determine the defendant's guideline range. As stated in paragraph 50 of the presentence report, pursuant to U.S.S.G. 1B1.8, the Rule 11 information included in paragraphs 50-69 was not used to determine relevant conduct and or to calculate the guidelines for offense behavior. The district court reiterated this at sentencing, "Pursuant to the United States Sentencing Guidelines 1B1.8, the [Rule 11] information included in Paragraph 50 through 69 was not used to determine relevant conduct or to calculate the guidelines for the offense behavior." (Sentencing Hearing Transcript, pp. 14-15)

### Objection 2 to the PSR: The petitioner objected to "the eight point increase for 'guns' in that these are cumulative and amount to 'double[-]dipping.'"

The petitioner was convicted of Counts 1 and 4, of the superseding indictment,

-11-

possession with intent to distribute in excess of five grams of cocaine base, and possession of a firearm by a convicted felon, respectively. Because both counts were related to the same criminal conduct, drug trafficking, the court considered them together under U.S.S.G. 3D1.2(a), 2K2(c)(1)(A) and 2D1.1, to compute the appropriate offense level. Paragraph 40 of the PSR stated, in pertinent part, "In this case, the defendant used/possessed firearms in connection with the Distribution of Cocaine Base, for which U.S.S.G. 2X1.1 directs the application of U.S.S.G. 1D1.1. The offense level determined in Count 1 was 34, which is greater than the resulting offense level for Count 4 which is 30. Therefore, the subtotal offense level for Count 4 is adjusted to 34."

The calculation and grouping procedure were both explained in the Addendum to the PSR, as follows. Under U.S.S.G. § 1B1.1, the PSR (a) determined, pursuant to § 1B1.2 (Applicable Guidelines), the offense guideline section from Chapter Two (Offense Conduct) applicable to the offense of conviction; (b) determined the base offense level and applied any appropriate specific offense characteristics, cross references, and special instructions contained in the particular guideline in Chapter Two in the order listed; (c) applied the adjustments as appropriate related to victim, role, and obstruction of justice from Parts A, B, and C of Chapter Three; and then (d) if there were multiple counts of conviction, repeated steps (a) through (c) for each count. Part (d) also instructs the court to "apply Part D of Chapter Three to group the various counts and adjust the offense level accordingly."

In paragraph 45 of the presentence report (Combined/Adjusted Offense Level), Counts 1 and 4 were grouped under U.S.S.G. §3D1.2(a) because the use of cross-reference in U.S.S.G. 2K2(c)(1)(A) resulted in the application of U.S.S.G. §2D1.1 to both counts for the same criminal

-12-

conduct and represented an instance where the counts involved the same victim and/or the same act or transaction. The petitioner has not presented a valid argument calling into question the way the court applied the United States Sentencing Guidelines, as he has not shown that the grouping and calculations were incorrect. Thus this ground for relief shall be denied for want of substantive merit.

> **Objections 3 and 4: The petitioner contends that the drugs used to calculate his offense conduct should not include the 55.7 grams of cocaine base, and that this quantity cannot be used unless the Rule 11 information is used. He contends that the proper amount of drugs is 0.662 grams.**

The claim of ineffective assistance of counsel on this ground fails; however, the underlying claim – the court's use of 55.7 grams of crack cocaine to compute the petitioner's sentence – has merit. The petitioner's sentence was calculated using 55.7 grams of cocaine base found at the scene of the petitioner's arrest, as well as quantities of other drugs found pursuant to valid search warrants. Each type of drug found was converted to a marijuana equivalent, then the converted amounts added together. This process yielded an amount of controlled substance equivalent to 1,114.625 kilograms of marijuana – the amount used to determine the petitioner's relevant conduct for United States Sentencing Guideline calculations – leading to an offense level of 31.

The petitioner raised this issue in a written objection to the Presentence Investigation Report. In addition, in his rebuttal in support of his petition for a writ of *habeas corpus*, the petitioner points out that the amount of cocaine base the Mississippi Crime Laboratory measured – and government discussed on the record at sentencing – was 48.6 grams, while the amount used in the Presentence Investigation Report – and thus in determining the petitioner's sentence –

was 55.7 grams. The petitioner argues that he relied on the government's use of the 48.6 grams in its calculations. He alleges that had he known the higher amount of cocaine base would be used in the calculation of his sentence, he would not have pled guilty.

This question does not fall into the category of a mere challenge to the application of the Guidelines; instead, the question is whether the recitation of the lower amount at the change of plea hearing caused the petitioner to plead guilty, or, at a minimum, whether the factual basis for sentence computation was correct. The court has reviewed the Presentence Investigation Report and the Mississippi Crime Laboratory report and finds that the petitioner was sentence based upon the weight of both the crack cocaine found at the scene of his arrest *and* the package containing that cocaine. The Mississippi Crime Laboratory measured the gross weight of the package to be 55.7 grams; the weight of the crack cocaine alone was 48.6 grams. Investigators seized small amounts of controlled substances while executing two search warrants; however, after converting the amount of each controlled substance to its legal marijuana equivalent, the vast bulk of the drugs attributed to the petitioner was from the crack cocaine found at the scene of the arrest: 1,114 kilograms of the 1,114.625 kilograms used to compute the petitioner's sentence. Had the 48.6 grams, the correct weight of the crack cocaine, been used in the calculation, the marijuana equivalent would have been 972.625 kilograms. This appears to lower the petitioner's offense level from 31 to 29, and thus the Guideline range from 188 - 235 months to 151 - 188 months. As the petitioner's sentence after pleading guilty was 230 months, it appears that the petitioner has been sentenced well above the correct guideline range. This objection will remain open, and the court shall set a briefing schedule on this single issue by separate order. The petitioner's other objections regarding ineffective assistance of appellate

counsel shall be dismissed for want of substantive merit.

## Government Breach of the Plea Agreement

The petitioner claims that the government breached the plea agreement. The court finds that the government did not breach the plea agreement. The court, however, sentenced the petitioner based upon an erroneous amount of crack cocaine. The petitioner claims that he did not receive the Presentence Investigation Report prior to sentencing and thus had no chance to challenge the PSR. The record contradicts this allegation, although the record supports the petitioner's allegation that he did not receive the PSR before the statutory deadline. At sentencing, the petitioner's counsel advised the court of the petitioner's claim that he never received the presentence report, but counsel stated that on February 7, 2003, she had the PSR hand-delivered to the petitioner at the Lafayette County Detention Center. Counsel's cover letter accompanying the PSR was read into the record and made an exhibit to the sentencing hearing. The February 7th letter stated:

> Dear Mr. Morris:
>
> Enclosed is a copy of my objections to the presentence report that I filed on your behalf. These are objections that I deem nonfrivolous. Also enclosed is Probation Form 13D for your signature and for use in attaching any objections you wish to file. A copy of a letter from Mr. Curtis Garrette is enclosed to provide you with instructions in filing objections. Also enclosed is a legal pad, envelopes for your use, and postage. Lastly, I enclose a copy of the government's sentencing memorandum for your review and reply if you choose. You may keep all of the able enclosed materials. In a separate envelope I have placed a copy of the presentence report for your use. However, this is a confidential document and you cannot retain a copy of it. You must return it to me. Therefore, I placed it in an envelope properly addressed to me, postage prepaid. Please return it to me as soon as possible.

(Sentencing Transcript pp. 20-21).

The petitioner argues that his rights were violated because the court failed to provide him and his counsel with copies of the PSR at least thirty-five days before sentencing as required by FED. R. CRIM. P. 32(e)(2) and 18 U.S.C. § 3552(d). Rule 32(e)(2) states, "The probation officer must give the presentence report to the defendant, the defendant's attorney, and an attorney for the government at least 35 days before sentencing unless the defendant waives this minimum period." As noted above, counsel had the PSR hand-delivered to the jail for the petitioner on February 7, 2003, and the petitioner was sentenced February 25, 2003. The petitioner thus received the PSR less than 35 days before sentencing. The petitioner never requested additional time to prepare for sentencing or requested a continuance of the sentencing. His counsel filed four objections to the PSR, and the Addendum to the PSR addressed each one. The Court adopted the PSR at sentencing. In one of the petitioner's hastily scrawled handwritten objections submitted to the court just prior to sentencing, the petitioner argued that the weight of crack cocaine attributed to him was too high. The petitioner was correct.

The petitioner has established a violation of Rule 32. In addition, the petitioner has shown that he was prejudiced – but not by the violation. A court may remand for resentencing only if a defendant suffered prejudice *as a result of the Rule 32 violation. United States v. Archer*, 70 F.3d 1149, 1151 (10th Cir. 1995) (emphasis added); *see also United States v. Esparza-Gonzalez*, 268 F.3d 272, 274 (5th Cir. 2001). To establish prejudice, defendant must show that: (1) the revised presentence report contained factual inaccuracies; and (2) he could have successfully objected to the report, and thereby received a shorter sentence, if he had been furnished with a copy of the report as required by Rule 32. *United States v. Archer*, 70 F.3d 1149, 1151 (10th Cir. 1995); *see also United States v. Esparza-Gonzalez*, 268 F.3d 272, 274 (5th

Cir. 2001).

The presentence report contained a factual inaccuracy; it reported 55.7 grams of crack cocaine when only 48.6 grams were present. The petitioner was sentenced based upon that inaccuracy. He has shown prejudice – a violation of his substantial rights. The petitioner, however, presented an objection on the weight of the crack cocaine at his sentencing. The court heard and overruled that objection. That ruling was in error. Thus, the prejudice the petitioner suffered was not due to a delay in viewing the PSR, the prejudice occurred when the court overruled the petitioner's valid objection to the PSR at sentencing. As such, the petitioner's ground for relief based upon the timing of his receipt of the PSR shall be dismissed.

## Jurisdiction

The petitioner argues that the court lacked subject matter jurisdiction during sentencing. This argument is without merit and shall be dismissed.

## Plain Error

The petitioner casts his claim regarding the amount of crack cocaine used for sentencing in terms of attorney error. As the petitioner himself presented that claim to the court, and the court ruled on it, the petitioner cannot prove the prejudice prong of the ineffective assistance of counsel test. *Strickland v. Washington*, 466 U.S. 668 (1984). The court instead holds that the oversight was plain error on its own part. As the petitioner has alerted the court to plain error, the task remaining is to cure that error. The court shall setting a briefing schedule on this issue by separate order.

In sum, all of the petitioner's claims – with the exception of the claim that the amount of crack cocaine used to compute his Guidelines sentence range – shall be dismissed. A final judment consistent with this memorandum opinion shall issue today.

**SO ORDERED,** this the 6th day of February, 2006.

/s/ W. Allen Pepper, Jr.
W. ALLEN PEPPER, JR.
UNITED STATES DISTRICT JUDGE